Henry M. Zaleski, J.
Petitioners in this proceeding, and Wyandanch Club, petitioner in a companion proceeding, seek a review under section 282 of the Town Law of certain action taken by the respondent Planning Board of the Town of Smith-town, Also a respondent is Fairwood Realty, Inc., the owner of the property involved. Both proceedings are concerned with the same action of the respondent board and seek the same relief.
The petitioners are owners of realty either adjoining or near to the premises which are the subject of each proceeding. The right of the petitioners to maintain this proceeding is not in issue.
Respondent Fairwood owns a large tract of land in the Town of Smithtown. . In April of 1960, it submitted to the Planning Board a proposed subdivision plat of a portion of its property designated as Section 4. Part of said section lay in a one-acre residence zone designated as “A ”, and part lay in a one-half acre residence zone designated as “ B ”. The plat so submitted proposed that all the building plots be located in one portion *152 of such Section 4 and be one-half acre in size, notwithstanding the acre requirement then applicable to part of such Section 4. The remaining portion within Section 4, parts of Sections 5 and 6, all totaling 37.4 acres, were shown on the plat as vacant land. Fairwood proposed to dedicate the vacant land to the town for park purposes and requested that so much of the land in Sections 4, 5 and 6 as was situated in the “ A ” zone be developed in accordance with the standards of the “ B ” residence zone. The Planning Board granted the application, but on review the Supreme Court annulled its action for the reason that the resolution failed to impose the conditions of delivery of a deed or covenant to the town and acceptance by the town.
Thereafter in October, 1960, Fairwood • applied anew, but for substantially greater relief. At that time, it presented plats of Sections 4, 5 and 6. The same park area was shown as in the April petition, but building plots for Sections 5 and 6 were added. Parts of Sections 4 and 5 were located both in “A” and “ B ” residence zones. All of Section 6 was located in the “ A ” residence zone. The application offered irrevocable dedication of 37.4 acres of land to the town for park purposes and proposed that all plots located in the “A” district be improved in accordance with the zoning requirements of the “ B ” district. This proposal was accepted by the board’s adopting on October 19, 1960, by a majority vote, two members dissenting, a resolution providing, among other things, that the regulations of the Building Zone Ordinance are hereby modified so as to permit all lots which lie within the “ A ” residence district to comply with the requirements of the “ B ” residence district. Regardless of the nomenclature attached to that action its effect, discounting the proposed park area, was to rezone 63.4 acres from “A” residence to “ B ” residence. The park area, consisting of 37.4 acres, was entirely situated in the “ A ” zone, and was not rezoned.
The action of the Planning Board was predicated on the purported grant of power contained in section 281 of the Town Law which reads in part: “ The town board is hereby authorized, by general or .special rule applicable to the zoning regulations * * * to empower the planning board simultaneously with the approval of any such plat either to confirm the zoning regulations of the land so plotted, as shown on the official zoning maps of the town, or to make any reasonable change therein, and such board is hereby empowered to make such change. The owner of the land shown on the plat may submit with the plat a proposed building plan * * *. Such building plan, if approved by the planning board, shall modify, *153 change or supplement the zoning regulations of the land shown on the plat, provided that for such land so shown there shall not be a greater average density of population or cover of the land with buildings than is permitted in the district wherein such lands lie, as shown on the official zoning map. Such building plan shall not be approved by the planning board unless in its judgment the appropriate use of adjoining land is reasonably safeguarded and such plan is consistent with the public welfare.”
On June 22, 1954, the Smithtown Town Board passed a resolution under the authority conferred by section 281, authorizing the Planning Board “ to make any reasonable change in the zoning regulation” of platted lands. Maintenance of average density of population and “ strict conformity with section 281 of the Town Law ” were dictated.
Petitioners argue that the 1954 resolution is unconstitutional because it lacks sufficient standards to guide the administrative agency in the exercise of its powers. Standards required to support a delegation of power by the local legislative body need not be specific. General standards are sufficient so long as they are capable of a reasonable application and are sufficient to limit and define the board’s discretionary powers. (Matter of Alcoe v. Dassler, 278 App. Div. 975, affd. 303 N. Y. 878.) The guides to the Planning Board action defined in the June 22, 1954 resolution meet that test.
Further, on the question of constitutionality, petitioners urge that invalidity of section 281 on the grounds that it does not contain sufficient standards and that it conflicts with sections 261-265 relating to the zoning power of the Town Board. The grant of power contained in section 281 is no less general than the grant of power to the Zoning Board contained in section 267 to vary the application of the zoning ordinance so that “ the spirit of the ordinance shall be observed, public safety and welfare secured and substantial justice done ” (subd. 5). That section was upheld in Roosevelt Field v. Town of North Hempstead (277 App. Div. 889). The standards of reasonableness in the change, maintenance of average population density, safeguarding adjoining lands and consistency with public welfare are sufficient to empower the board to perform the limited function granted by the enabling statute. In addition, as will be seen hereafter, section 281 is not in conflict with sections 261-265.
A determination made by an administrative body must be viewed seriously. If there is any reasonable basis for its action, if there is sufficient evidence to permit the exercise of its discretionary powers, its conclusion may not be disturbed. The rule applies as well to planning boards as to any administra *154 tive agency. (Gore v. Hicks, 115 N. Y. S. 2d 187.) Inherent in that principle, however, is the prerequisite that the hody making the determination has the power to do so. Absent such power the determination will be overthrown, even though it cannot be labeled arbitrary. (Matter of Kovelman v. Plaut, 201 Misc. 473.) In the opinion of the court, section 281 was not intended to give, and did not give, to the respondent board the power it has attempted to exercise.
On the theory that it was a ‘ ‘ reasonable change ’ ’, the Planning Board gave to the developer, Fairwood, the right to build homes on 63 acres of land zoned for one acre in accordance with the regulations applicable to one-half acre. That its action amounted to rezoning is recognized by the respondents in their brief. Therein they utilize consistently the words 11 rezoning ” and “ rezoned ” to describe the board’s act. The language of Mr. Justice Ritchie in Matter of Hess v. Bates (17 Misc 2d 22, 23) cited with approval in Levitt v. Incorporated Vil. of Bands Point (6 N Y 2d 269) is appropriate here: “ I cannot believe that the purpose of a statute designed for granting a variance to provide for individual contingencies can be construed to be so broad that 40 acres can with one stroke be lifted out of a Residence A zone and placed in an entirely different zone. I believe this would constitute legislation which can never be accomplished by an administrative body ’ ’. In this proceeding we are concerned with a change in approximately 63 acres out of a total of about 100 acres. So great a change can in no sense be considered reasonable.
Undoubtedly the board has the power to make a reasonable change. The statute so declares, but its action in so doing is administrative, not legislative. When it encroaches on the legislative authority to make zoning changes (Town Law, § 265), it cannot be upheld. This court, therefore, holds that the power to make reasonable changes in the zoning ordinance does not confer the power to amend the zoning ordinance by rezoning large tracts of land. Any other conclusion would lead to a destruction of the legislative power of the Town Board to establish zoning districts and regulate the use of property. This view is strengthened by a reading of subdivision 1 of section 277 referring to requirements for approval of plats. It is therein stated ‘ ‘ that where a zoning ordinance has been adopted by the town the plots shown on said plat shall at least comply with the requirements thereof ”. The power to amend the zoning regulations of the land does not carry with it the power to change the zoning district of the land.
*155 There is yet another reason for annulling the board’s determination. Even were we to stretch a point and assume that the resolution adopted on October 19, 1960 fell within the purview of a reasonable change, it must be set aside for failure to comply with the standards created by the statute. One of the guides concerns density of population. In that connection section 281 recites that upon approval, the building plan ‘£ shall modify, change or supplement the zoning regulations of the land shown on the plat, provided that for such land so shown there shall not be a greater average density of population * * * than
is permitted in the district wherein such lands lie, as shown on the official zoning map ”. The land in question was located in the ££ A” zone. By the zoning ordinance the average density in the ££ A ” zone was one residence per acre and two per acre in the ££ B ” zone. Applying that standard to the facts herein, it is clear that the resultant average density of population is increased. Respondents assert that 88 homes could have been constructed on 100 acres in the ££ A ” residence zone whereas the plat shows only 79 homes on the land as altered. That conclusion overlooks the express wording of the statute that the density shall not be greater £ ‘ than is permitted in the district wherein such lands lie ’ ’. The size of the area to be developed does not change the arithmetic. For example, in Section 6 the entire 62.5 acres lay in the ££ A ” zone. With 29.4 acres removed for park purposes, there remained 33.1 acres available for development. These acres still lay in the ££ A” zone and their development was dependent upon the density permitted in that district. To construct 49 homes on 33.1 acres would obviously increase the allowable density from one house per acre to almost one and one-half houses per acre.
In support of their positions both sides place some reliance on Church v. Town of Islip (8 N Y 2d 254). Therein the Town Board granted a change of zoning from residence to business on condition that the owner comply with stated requirements. As against an argument that the board engaged in “ contract zoning ”, the court upheld the change. Contrary to the respondents’ belief, the Church case does not support their positions. In the first place, the action therein reviewed was legislative action by the Town Board, not administrative action. In the second place, the court specifically noted that the conditions £ £ were intended to be and are for the benefit of the neighbors ’ ’ and that the Town Board ££ could have, presumably, zoned this Bay Shore Road corner for business without any restriction ’ ’ (p. 259). The respondents herein cannot make either claim. Except for the conclusion that the plans ££ appropriately and *156 adequately safeguard the use of adjoining lands ” there is not one shred of evidence to show benefit or even regard for the neighbors. Nor have respondents argued that all the lands zoned “A” could have been zoned “ B ” by the board absent the park element. There can be no doubt that the board’s sole motivation was the lure of a large park, the dedication of which was not imposed by the board as a condition, but offered by the developers as the price for rezoning. These are the “ actualities, not phrases ” (Church v. Town of Islip, supra, p. 259) with which we are here dealing. No power is given to the board to negotiate with its power in that fashion.
Finally, the board made some purported findings of fact among which are included the statements that the use of adjoining land is appropriately and adequately safeguarded and that the subdivision is “ consistent with the public welfare ” of the town. Those statements, taken verbatim from section 281, are conclusions, not facts. They are wholly unsupported by substantiating facts. This defect is another reason to warrant reversal. (Cf. Matter of Ardella v. Evershed, 16 Misc 2d 261.)
In view of all that has been said herein it is unnecessary to consider any other points raised by counsel. The determination of the respondent Planning Board will be annulled.