George F. X. McInerney, J.
Petitioners’ motion to consolidate motions dated September 24, 1971, and January 25, 1972, is granted.
Respondents’ motion to dismiss the petition is granted.
Petitioners are contract vendees of a parcel of land situate within the Village of Westhampton Beach, having a frontage of 3 50 feet on Jessup Lane, and complying with the village zoning ordinance as to one-acre zoning. The Suffolk County Health Department has approved the parcel with respect to sanitary drainage and there is municipal water in Jessup Lane adjacent to the parcel of land. The only problem involves an alleged violation of subdivision E of article XI, section 2, of the village ordinance, which reads as follows: “ Before any lot is formed from part of a lot, the owner thereof shall submit the proposed separation or sub-division plan to the Planning Board in duplicate for its approval, and determination whether same constitutes a sub-division.”
By deed dated February 26, 1971, the Delaware Midland Corporation deeded the property in question to Kenneth J. Sartori who then contracted to transfer the property to the petitioner by an instrument dated March 15,1971. When Sartori took title, Delaware Midland Corporation had owned an adjoining parcel and other land in the area. When it conveyed the property to Sartori, Delaware Midland Corporation did not request approval from the Village Planning Board pursuant to subdivision E of article XI, section 2.
The Building Inspector subsequently denied the application for a building permit, stating for his reason, “ failure to comply with subdivision requirements ”. The Board of Appeals affirmed the action of the Building Inspector by a decision which stated “Prior Planning Board approval not having been granted this *580 Board is without jurisdiction to consider the instant application .
Subsequently on August 6, 1971, petitioners applied to the respondent Planning Board for a subdivision waiver and were denied.
This motion, as consolidated, seeks to review the determination of the Building Inspector, Board of Appeals, and Planning Board. The Board of Appeals in its decision of December 17, 1971, determined that it would not grant the variance because the petitioner, Fred Adams, a real estate broker, in their opinion knew or should have known that the petitioners ’ contract vendor’s grantor (Delaware Midland Corporation) had not received a planning board waiver pursuant to section 2, subdivision E of article XI, at the time that Delaware Midland Corporation sold the plot in question to Kenneth J. Sartori.
This controversy raises the bothersome issue of how a Planning Board can assure itself that acreage will be developed according to general subdivision standards and that techniques employed by unwilling landowners to evade the usual procedures and burdens of orderly subdivision will not be successful.
Inherent in this general statement is the need for equal treatment of all landowners; i.e., that one landowner not be forced to pay the additional costs of formal subdivision while another escapes them.
It seems to the court that the main problem should be approached on a basis of the effect of subdividing upon the community, rather than how it affects the individual, for 100 homes built by one landowner-subdivider create the same demand for services as 100 homes built by 100 individual owners.
All those who have been associated with town boards, boards of appeals and planning boards are all too familiar with the various evasions utilized by individuals to by-pass the Planning Board, Some buy noncontiguous lots on old subdivisions and improve them one at a time; some have different corporations or individuals buy alternate lots; some attempt to go through the Board of Appeals for a variance, usually brought by the contract vendee, or by a careless buyer, on the grounds of hardship. This understandable reluctance to expend additional moneys for proper improvement has caused a constant battle between the planning boards and the builders, and will probably continue until the improvements required of a subdivider will enure only to the lots he owns, and not to the general benefit of the community which many times benefits from a landfall of sewer, road, and utility improvement.
*581 The ordinance involved here is a logical step in the battle. The ordinance says a subdivision means breaking up a larger parcel of ground into two or more smaller parcels. The court cannot disagree with this. The provisions of section 1115 of the Public Health Law which define a subdivision as the division of a tract into five or more parcels is inapposite to the purposes of a Planning Board which has many more concerns than health alone. If a subdivider plans a total of 1,000 homes and subdivides his land into 4 parcels at a time, changing the name of the fee owner of the residue at the same time, can it be seriously maintained that he should not have to go through the Planning Board?
Title H of the Public Health Law which contains section 1115 reads: “Title II — Realty Subdivisions: Water and Sewerage Service ” and a reading of this title shows it is only concerned with water and sewage requirements.
Petitioners advance several arguments for relief. One is based upon the conclusion that the Board of Appeals was without jurisdiction to grant the relief sought. The court agrees with the Board of Appeals. Petitioners cite two cases for their argument (Matter of Schwartz, N. Y. L. J., Oct. 5, 1964, p. 20, col. 8; Matter of Eriksen, N. Y. L. J., Dec. 4, 1964, p. 22, col. 3, affd. sub mom. Matter of Eriksen v. Commerdinger, 24 A D 2d 934).
The first of these cases sought a variance in view of the fact that the subdivided lot did not meet the requirements of the zoning ordinance. No other board could grant a variance, and the court properly held that the board had to entertain the application.
The opinion mentions that the application was for a variance of the minimum building line width. The court delineated the problem when in pointing out that the Planning Board had in effect denied the application, it stated: “No other determination could have been made by the board, since its approval of building plots in the open development area was limited, inter alia, to partitions therein meeting minimum zoning requirements. The planning board had no authority to change or to relax minimum zoning requirements and therefore their determination on petitioner's application was proper ”. (Matter of Eriksen, supra.)
In Matter of Schwartz (supra) the parcel of land complied with all the zoning ordinance requirements. The Building Inspector denied a permit on the grounds that the property had been subdivided without Planning Board approval.
The denial was based on the provisions of section 276 of the Town Law which is a general statute authorizing the creation of Planning Boards and outlining their authority.
*582 The court directed the issuance of the permit, but carefully limited the reasoning it applied. Thus it pointed out: ‘ ‘ The respondent has failed to specifically associate the said regulation and statutes with the instant case in a manner which would convince this court that the petitioner is not entitled to the relief sought.” Further: “ In the opinion of the court the inference that the predecessor in title did not comply with section 276 of the Town Law is not binding on this petitioner.” (Matter of Schwartz, supra.)
In the instant case, in its present posture as a motion, there is no such failure of proof. The statute is clear, and if constitutional, applies.
Petitioners also cite Matter of Costa (N. Y. L. J., Mar. 5,1965, p. 20, col. 1) as authority but the court therein stated that it was not concerned in the proceeding with the question of obtaining Planning Board approval to subdivide the lot.
There is an additional point raised which merits discussion. The statute limits the application for the subdivision determination to the owner. While ordinarily the petitioners herein, contract vendees, would, as the equitable owners of the premises, be considered as the owners, the purpose of this statute is clearly to study the entire holdings of the owners so as to enable a suitable subdivision plan for all of the land. Thus, there is a great difference in the nature of the owner, vis-á-vis the contract vendee. As already mentioned, if an owner of acreage only has to deed out building lots meeting the zoning requirements to contract vendees who in turn will be permitted to obtain building permits because they are not the subdividers, the whole purpose of the Planning Board can be drastically vitiated.
The issues are discussed .at length in Matter of Fullam v. Kronman (51 Misc 2d 1079, affd. 31 A D 2d 947, affd. 26 N Y 2d 725).
Although this consolidated motion is being granted on the very narrow issue that the petitioners have no standing as contract vendees, many basic determinations lie in the offing, such as whether the owner can be joined, whether the Planning Board must impose such conditions on the single lot as it deems reasonable in his absence, and whether a complete denial of relief to the petitioners could be upheld.
Finally it should be noted that the reason given by the Board of Appeals for the denial of the application is improper. The proper reason was that no variance was sought and it did not have the power to act as a Planning Board.
*583 It may be argued that the implementation of the statute may place a burden upon innocent landowners. This is true, but the same result occurs from mortgages and other liens as well as defects in title. One buys property subject to ordinances.